# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

CHAUNCEY MOORE,
    *Plaintiff*,

v.

TOWN OF NORWALK, *et al.*,
    *Defendants*.

No. 3:17-cv-695 (JAM)

## INITIAL REVIEW ORDER PURSUANT TO 28 U.S.C. § 1915A

Plaintiff Chauncey Moore is a prisoner in the custody of the Connecticut Department of Correction. He has filed a civil rights complaint *pro se* and *in forma pauperis* under 42 U.S.C. § 1983, alleging that he was subject to excessive force during an arrest in April of 2014. After an initial review, the Court concludes that the complaint will proceed in part, and will be dismissed in part with leave to amend.

## BACKGROUND

The following allegations from plaintiff's complaint are accepted as true solely for purposes of the Court's initial review. Plaintiff names seven defendants: the Town of Norwalk, Norwalk Police Officers John Does #1 through #5, and Norwalk Police Officer Supervisor John Doe #6.

On April 24, 2014, a supervisor with the Norwalk Police Department, Supervisor Doe #6, told plaintiff to leave Norwalk immediately or he would be arrested if seen in Norwalk again. Plaintiff had previously been arrested in Norwalk, but on the date he was told to leave Norwalk, he was not committing any crimes.

Two days later, on the morning of April 26, 2014, plaintiff was approached by Officers Doe #1 and Doe #2 as he was leaving a convenience store with his nephew and his nephew's

friend. Officers Doe #1 and Doe #2 exited their vehicles and attempted to handcuff plaintiff. Afraid that he would be arrested, plaintiff tried to run away. After he went a short distance, plaintiff was tased by Officer Doe #1 and, while being tased, he heard the officers making racially derogatory remarks. Plaintiff attempted to cooperate with the officers after he was tased, begging them to stop, but the officers continued to tase, kick, and stomp him. After about five to ten minutes of abuse, during which time plaintiff never fully lost consciousness, defendant Supervisor Doe #6 ordered plaintiff to apologize for running from the officers. Plaintiff observed about six officers standing around him and bragging about the abuse they had inflicted.

Officers Doe #1 and Doe #2 told Supervisor Doe #6 that plaintiff had swallowed what appeared to be drugs during the encounter. Supervisor Doe #6 ordered Officers Doe #3 and Doe #4 to take plaintiff to Norwalk Hospital to have plaintiff's stomach pumped and its contents tested for drugs. On the way to the hospital, Officers Doe #3 and Doe #4 continued the verbal racial abuse and, at one point, Officer Doe #3 told plaintiff to lean forward, and then slammed on the brakes, causing plaintiff to smash his face against the divider between the seats.

The officers repeatedly tried to get plaintiff to confess to swallowing narcotics but plaintiff denied doing so. At the hospital, Officers Doe #3 and Doe #4 told nurses that they were there to have plaintiff's stomach pumped and tested for drugs. The officers made plaintiff undress and, even though he was cooperating, they told the nurses to put plaintiff under anesthesia so they could pump his stomach. Plaintiff did not consent to the procedure. The contents of plaintiff's stomach were removed, and nothing was found.

While in the hospital, an x-ray of plaintiff's foot showed a fractured heel. He also had injuries to his hand, neck, and temple. Plaintiff later learned from his injuries that the officers had used a taser on him three times and that Officer Doe #5 used a stun gun on plaintiff twice

2

while other officers had been using tasers. Officer Doe #5 admitted to using the stun gun once while another officer was using a taser. But plaintiff believes that the police reports were falsified to show only one use of the taser to conceal the excessive force used against him. Plaintiff's injuries, photographed by his defense attorney, were consistent with three uses of a taser and two uses of a stun gun. Plaintiff is African-American, and none of the defendant officers are African-American.

As a result of the encounter with the police on April 26, 2014, plaintiff was charged with assault on a police officer. Those charges were nolled in exchange for a guilty plea for resisting arrest.

## DISCUSSION

Pursuant to 28 U.S.C. § 1915A(a), the Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. The Court must accept as true all factual matters alleged in a complaint, although a complaint may not survive unless its factual recitations state a claim to relief that is plausible on its face. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014) (same). Nevertheless, it is well-established that "pro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

In recent years, the Supreme Court has set forth a threshold "plausibility" pleading standard for courts to evaluate the adequacy of federal court complaints. A complaint must allege

enough facts—as distinct from legal conclusions—that give rise to plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Notwithstanding the rule of liberal interpretation of a *pro se* complaint, a *pro se* complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See, e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

*Excessive Force*

Plaintiff alleges that the individual Norwalk Police Officers subjected him to excessive force before and during his arrest. This claim implicates his rights under the Fourth Amendment (as incorporated by the Fourteenth Amendment against the states and municipal actors). *See Graham v. Connor*, 490 U.S. 386, 394–95 (1989); *Brown v. Doe*, 2 F.3d 1236, 1242 n.1 (2d Cir. 1993). The Fourth Amendment protects plaintiff from excessive force during an arrest or investigatory stop, even though "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396. Whether the force used was excessive is "analyzed under a 'reasonableness' standard, and determined by balancing . . . the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake" and by considering "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Dancy v. McGinley*, 843 F.3d 93, 116 (2d Cir. 2016).

Taken as true, plaintiff's allegations easily suffice to establish a claim for excessive force in violation of the Fourth Amendment. Officers Doe #1 and Doe #2 stopped plaintiff without legitimate reasons, then chased him down after he fled. The complaint also alleges that Officer

4

Doe #1 tased plaintiff and Officer Doe #5 used his stun gun on plaintiff without just cause. The complaint will proceed as against Officers Doe #1 and Doe #5. Plaintiff's allegations also easily suffice to establish a claim for excessive force in violation of the Fourth Amendment as against Officer Doe #3 for slamming on the brakes, without justification, to get plaintiff to hit his head. The complaint will proceed as against Officer Doe #3.

The complaint does not allege with specificity which other officers were involved in using the stun gun, kicking, or stomping on him. But plaintiff has alleged that all six officers either participated in beating him or observed the beating approvingly. The Second Circuit has recently reiterated that "[a] police officer is under a duty to intercede and prevent fellow officers from subjecting a citizen to excessive force, and may be held liable for his failure to do so if he observes the use of force and has sufficient time to act to prevent it. Liability attaches on the theory that the officer, by failing to intervene, becomes a 'tacit collaborator' in the illegality." *See Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016). The complaint will therefore proceed against Officers Doe #2, Doe #3, Doe #4, and Supervisor Doe #6 for failing to intervene to prevent plaintiff from being beaten.

### *Unreasonable Search*

Plaintiff also alleges that several officers subjected him to an unreasonable search when they directed hospital staff to pump his stomach without his consent. The Fourth Amendment protects the rights of the people "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV. The Fourth Amendment limits both searches and seizures. A "search" for purposes of the Fourth Amendment occurs either when the police intrude upon a person's reasonable expectation of privacy or, alternatively, if the police otherwise trespass upon a suspect's person, house, papers, or effects

5

for the purpose of acquiring information. *See Florida v. Jardines*, 133 S. Ct. 1409, 1414 (2013); *United States v. Jones*, 132 S. Ct. 945, 951 n.5 (2012). "The overriding function of the Fourth Amendment is to protect personal privacy and dignity against unwarranted intrusion by the State." *Schmerber v. California*, 384 U.S. 757, 767 (1966).

A search into the body, however, requires a "more substantial justification" than other searches, *see Winston v. Lee*, 470 U.S. 753, 767 (1985), because such a search implicates "expectations of privacy and security of such magnitude that the intrusion may be 'unreasonable' even if likely to produce evidence of a crime." *Id.* at 759. "The reasonableness of surgical intrusions beneath the skin depends on a case-by-case approach, in which the individual's interests in privacy and security are weighed against society's interests in conducting the procedure. In a given case, the question whether the community's need for evidence outweighs the substantial privacy interests at stake is a delicate one admitting of few categorical answers." *Id.* at 760. Courts weighing whether a bodily intrusion is "reasonable" must consider the existence of probable cause, the extent to which the medical procedure may threaten the health or safety of an individual, the extent of intrusion upon the individual's dignitary interests in personal privacy and bodily integrity, and the community's interest in fairly and accurately determining guilt or innocence. *See id.* at 760–63.

The Supreme Court has previously held unconstitutional—albeit under the due process clause of the Fourteenth Amendment—a police officer's attempt to extract drugs from a suspect's stomach, without consent, by taking him to the hospital and directing that an emetic be administered to induce vomiting. *See Rochin v. California*, 342 U.S. 165 (1952); *see also Winston*, 470 U.S. at 762 n.5. It concluded that forcible extraction of evidence from the suspect's stomach in that manner did "more than offend some fastidious squeamishness or private

6

sentimentalism about combatting crime too energetically. This is conduct that shocks the conscience . . . [and] is bound to offend even hardened sensibilities. They are methods too close to the rack and the screw to permit of constitutional differentiation." *Rochin*, 342 U.S. at 172–73. *See also County of Sacramento v. Lewis*, 523 U.S. 833, 849 n.9 (1998) (indicating that such a search today would be analyzed under the Fourth Amendment "with the same result").

In light of *Winston* and *Rochin*, I conclude plaintiff has plausibly alleged a violation of his Fourth Amendment rights. Taken as true, the complaint reasonably alleges that plaintiff did not swallow drugs, nor was he exhibiting any signs that he had swallowed drugs such that removal of them would have been necessary to save his life. The complaint also alleges that Officers Doe #1 and Doe #2 falsely told Supervisor Doe #6 that plaintiff had swallowed drugs, that Supervisor Doe #6 then told Officers Doe #3 and Doe #4 to take plaintiff to the hospital to have his stomach pumped, and that Officers Doe #3 and Doe #4 instructed the hospital staff to perform the procedure against plaintiff's will.

Plaintiff has therefore plausibly alleged that, in one way or another, Officers Doe #1, Doe #2, Doe #3, Doe #4, and Supervisor Doe #6 caused plaintiff to undergo a highly invasive medical procedure against his will in search of drugs he had not swallowed. The complaint will therefore proceed against Officers Doe #1, Doe #2, Doe #3, Doe #4, and Supervisor Doe #6 for violation of plaintiff's Fourth Amendment rights.

### *Claims against the Town of Norwalk*

Finally, plaintiff asserts a claim for municipal liability against the Town of Norwalk, first, on the basis that the Town failed to train the officers on proper use of force, particularly prohibiting them from using a taser and stun-gun on a suspect at the same time. Plaintiff also

asserts that Supervisor Doe #6 improperly ordered plaintiff to have his stomach pumped and, because he was the policymaker for the Town, the Town is liable.

It is well established that a municipality may be liable for the unconstitutional misconduct of its employees if such misconduct was the product of a municipal policy, practice, or custom. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 62 (2d Cir. 2014). A policy or custom may not be inferred simply from the fact that individual police officers have engaged in wrongdoing, and the complaint otherwise lacks any particulars concerning municipal policies or customs that led to the violation of plaintiff's constitutional right to be free from excessive force. *See generally Adams v. City of New Haven*, 2015 WL 1566177 (D. Conn. 2015) (discussing nature of required allegations to allow *Monell* claim for municipal liability to proceed).

Here, plaintiff has alleged that the town failed to train its police officers not to deploy a stun gun and a taser on a suspect. But this claim is not facially plausible because plaintiff has not alleged any specific facts suggesting that his injuries were caused by a failure to train, rather than the individual acts of the arresting officers. *See id.* at *4 (citing *Simms v. City of New York*, 2011 WL 4543051, at *3 (S.D.N.Y. 2011)).

Nor is plaintiff's claim against the Town for having his stomach pumped properly premised on the actions of Supervisor Doe #6. Plaintiff has not alleged sufficient information about Supervisor Doe #6 that could reveal his official title or responsibilities. Nor has he alleged whether Supervisor Doe #6 had policymaking authority and, even then, whether Supervisor Doe #6's actions in directing that plaintiff have his stomach pumped was an exercise of policymaking authority such that "the municipality was the 'moving force' behind the injury alleged." *See Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404–405 (1997).

To be sure, plaintiff has alleged that Supervisor Doe #6 was personally involved in the alleged constitutional violation and, as such, the complaint will proceed against him. But his allegations regarding Supervisor Doe #6's policymaking authority do no more than attempt to hold the municipality liable on a *respondeat superior* theory, which he may not do. *Monell*, 436 U.S. at 690. Because plaintiff has not alleged facts sufficient to implicate the Town of Norwalk, the complaint is dismissed against that defendant, without prejudice to plaintiff's reasserting this claim.

### *John Doe Claims*

Plaintiff's claims against unnamed "John Doe" defendants are permissible at this time as placeholders for purposes of notice of the scope of plaintiff's claim and for conducting discovery in this action. *See, e.g.*, *Abreu v. City of New York*, 657 F. Supp. 2d 357, 362–63 (E.D.N.Y. 2009). Plaintiff is cautioned, however, that he cannot ultimately obtain monetary relief against unnamed "John Doe" defendants, and he must diligently take steps to learn the real names and identities of the "John Doe" defendants and to amend his pleadings to identify by name any person whom he seeks to hold liable for money damages. *See, e.g.*, *Hogan v. Fischer*, 738 F.3d 509, 517–20 (2d Cir. 2013).

Because the Court cannot serve process on any of the defendants so long as they have not been identified by name, plaintiff shall file an amended complaint that identifies by name any of the "John Doe" defendants whom he seeks to hold liable. If plaintiff is unable to identify all or any of the "John Doe" defendants by name within the allotted time period, then he shall file a motion for extension of time that describes in detail the efforts he has made to learn the names of these defendants. Failure to file a timely amended complaint or motion for additional extension of time may result in the dismissal of this action.

## CONCLUSION

For the foregoing reasons, the Court enters the following orders:

(1) All claims against the defendant Town of Norwalk are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1), without prejudice to filing an amended complaint if plaintiff can allege facts, in good faith, forming a basis for municipal liability. The excessive force claims (and their failure-to-intercede counterparts) against all individual Police Officers John Does #1–#6 in their individual capacities shall proceed. In addition, the claims of unreasonable search shall proceed as against Officers Doe #1, Doe #2, Doe #3, Doe #4, and Supervisor Doe #6 in their individual capacities. All claims seeking damages against any defendant in his or her official capacity pursuant to 28 U.S.C. § 1915A(b)(2) are **DISMISSED**.

(2) Plaintiff's individual-capacity claims against the individual "John Doe" defendants may proceed. Plaintiff shall file an amended complaint by **August 15, 2017**, identifying by name any John Doe defendants or shall file a motion for extension of time to file an amended complaint explaining why he has been unable to name any "John Doe" defendants.

(3) If plaintiff wishes the Court to appoint *pro bono* counsel to represent him in this action, then plaintiff should promptly file a motion by **July 15, 2017**, requesting the appointment of counsel and stating what efforts plaintiff has made to date to secure privately retained counsel.

(4) If plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that plaintiff MUST notify the court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of

change of address. Plaintiff should also notify the defendant or the attorney for the defendant of his new address.

(5)     Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the Court.

It is so ordered.

Dated at New Haven, Connecticut this 15th day of June, 2017.

*Jeffrey Alker Meyer*_____
Jeffrey Alker Meyer
United States District Judge